# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Brock Fredin, | Case No. 18-CV-2911 (SRN/HB) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Lyndsey M. Olson and the Attorneys of the Saint Paul City Attorney's Office, | |
| Defendants. | |

This matter is before the Court on Plaintiff Brock Fredin's Complaint for Prospective Declaratory and Injunctive Relief [Doc. No. 1] and Application to Proceed in District Court Without Prepaying Fees or Costs ("IFP Application") [Doc. No. 2]. For the following reasons, the Court recommends that this action be dismissed without prejudice.

After reviewing the IFP Application, this Court concludes that Fredin qualifies financially for IFP status. That said, an IFP application will be denied, and an action dismissed, when an IFP applicant has filed a complaint that fails to state a cause of action on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Atkinson v. Bohn*, 91 F.3d 1127, 1128 (8th Cir. 1996) (per curiam); *see also Carter v. Schafer*, 273 F. App'x 581, 582 (8th Cir. 2008) (per curiam) ("[C]ontrary to plaintiffs' arguments on appeal, the provisions of 28 U.S.C. § 1915(e) apply to all persons proceeding IFP and are not limited to prisoner suits, and the provisions allow dismissal without service."). In reviewing whether a complaint states a claim on which relief may be granted, this Court must accept

as true all of the complaint's factual allegations and draw all reasonable inferences in the

plaintiff's favor.  *See Varga v. U.S. Bank Nat'l Ass'n*, 764 F.3d 833, 838 (8th Cir. 2014).

The complaint's factual allegations need not be detailed, but they must be sufficient to

"raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007).  The complaint must "state a claim to relief that is plausible on its face."

*Id.* at 570.  In assessing the complaint's sufficiency, the court may disregard legal

conclusions that are couched as factual allegations.  *See Hager v. Ark. Dep't of Health*,

735 F.3d 1009, 1013 (8th Cir. 2013) (citing *Papasan v. Allain*, 478 U.S. 265, 286

(1986)).  Generally, on a Rule 12(b)(6) motion, a court may not consider matters outside

the pleadings in assessing the sufficiency of a complaint.  *Porous Media Corp. v. Pall*

*Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (citations omitted).  A court may make

exceptions to this rule for matters of public record, materials "necessarily embraced by"

the complaint, and exhibits submitted with the complaint.  *Id.* (citations omitted).  Pro se

complaints are to be construed liberally, but they still must allege sufficient facts to

support the claims advanced.  *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)

(citing cases).

   As a threshold matter, the Court construes the Complaint as bringing an action for

injunctive relief under 42 U.S.C. § 1983.  The Complaint's only cause of action contends

that Defendants violated the First, Fourth, and Fourteenth Amendments, but one cannot

bring a cause of action directly under the Constitution.  *See, e.g.*, *Franco v. Minnesota*,

No. 12-CV-1706-ADM-JJG, 2013 WL 2556510, at *5 (D. Minn. June 11, 2013)

("[T]here is no direct cause of action by way of the Amendments; rather the vehicle for

vindicating constitutional rights is 42 U.S.C. § 1983.") (citing *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992)).  Because courts should liberally construe pro se pleadings so as to invoke the proper remedy, *United States v. Woodall*, 12 F.3d 791, 794 n.1 (8th Cir. 1993), *abrogated on other grounds by Dusenbery v. United States*, 534 U.S. 161 (2002), the Court treats the Complaint as pressing a § 1983 claim.

With that established, numerous problems with the Complaint dictate its dismissal. First, Fredin names one defendant inappropriately.  Fredin names as Defendants (1) Lyndsey M. Olson and (2) "the attorneys of the Saint Paul City Attorney[']s Office." (Compl. 1 (capitalization altered).)  The second entity is not an appropriate defendant; Fredin must specifically name the people or entities he is suing.  That is, rather than naming "the attorneys of the Saint Paul City Attorney's Office" (SPCAO), Fredin must sue specific SPCAO attorneys—using their names (or "John Doe" nomenclature if he does not presently know the specific individuals that took alleged actions)—and/or the SPCAO itself.[1]  The Court thus recommends dismissal of the Complaint (without prejudice) as to "the attorneys of the [SPCAO]."

The only remaining defendant is Olson.  The Complaint is replete with allegations about other entities and individuals (*see generally* Compl. 5–15), but for present

---

[1]  Even if Fredin fixed this problem, he may face additional pleading issues.  For example, if he later names another specific individual defendant, he must also make allegations sufficient to show that the new defendant is liable under § 1983.  On the other hand, if he sues the SPCAO as an entity, he will have to make allegations sufficient to show that the SPCAO itself as an entity is liable under § 1983.  The Court obviously cannot prejudge any such pleading issues at this time.

purposes, what matters is its Olson-related allegations.  Review of the Complaint yields

the following:

(1)  "[Olson] is the current Saint Paul City Attorney in Saint Paul.  Upon information and belief, [Olson] oversees all investigations performed by the [SPCAO]."  (*Id.* at 5.)

(2)  "[U]pon information and belief, [Olson] was involved with and oversaw the investigation and prosecution of [Fredin] . . . in the matter *State of Minnesota v. Brock Fredin*[,] Case No. 62-CR-18-157[,] and *State of Minnesota v. Brock Fredin*[,] Case No. 62-CR-17-3156."  *Id.*[2]  Fredin suggests that Olson engaged in these prosecutions to cover up a "violent assault"—namely, the execution of a search warrant at Fredin's home in April 2017.  (*Id.* at 11; *see also id.* at 6 (discussing search).)

(3)  Olson sought a "digital search warrant" for "illegal images (pornographic or defamatory), and other illegal data" on devices seized during the April 2017 search, even though the original search warrant for Fredin's home had no pornography- or defamation-related allegations.  (*Id.* at 7.)

---

[2]  In Case No. 62-CR-17-3156, authorities charged Fredin with stalking under Minn. Stat. § 609.749.2(6) and violating a restraining order under Minn. Stat. § 609.748.6(b).  *See* Register of Actions, *Minnesota v. Fredin*, Case No. 62-CR-17-3156 ("Register of Actions, Miller Action").  Both charges concern Fredin's conduct toward Grace Elizabeth Miller (*see* Compl. 17), who had previously received a harassment restraining order against Fredin, *see* Order Granting Harassment Restraining Order After Hearing, *Miller v. Fredin*, Case No. 62-HR-CV-16-46 (Minn. Dist. Ct. Mar. 21, 2016) ("Miller HRO"). A jury convicted Fredin on the stalking charge in July 2018; it appears the restraining-order violation went unadjudicated as a lesser included offense.  *See* Register of Actions, Miller Action; *cf.* Minn. Stat. § 609.04.1(1) ("Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included offense, but not both.").  The trial court sentenced Fredin on October 17, 2018.  *See* Register of Actions, Miller Action.

In Case No. 62-CR-18-157, Fredin faces a second charge of violating a restraining order under Minn. Stat. § 609.748.6(b).  *See* Register of Actions, *Minnesota v. Fredin*, Case No. 62-CR-18-157 ("Register of Actions, Middlecamp Action").  This concerns a restraining order issued against Fredin concerning Lindsey Middlecamp.  (*See* Compl. 17); *see also* Order Granting Harassment Restraining Order, *Middlecamp v. Fredin*, Case No. 62-HR-CV-17-233 (Minn. Dist. Ct. Oct. 2, 2017) ("Middlecamp HRO").  This matter is presently set for trial on November 5, 2018.  *See* Register of Actions, Middlecamp Action.

(4)     Olson is a "military officer at the Minnesota National Guard and likely knows [Fredin's] ex-girlfriend United States Air Force Major Grace Miller." (*Id.* at 8.)

(5)     "Olson uses her Saint Paul City Attorney position to attack her critics by filing defamation lawsuits." (*Id.*)

(6)     Olson is "using a criminal charge in *State of Minnesota v. Brock Fredin*[,] Case No. 62-CR-18-157[,] to collaterally attack and block [Fredin's] legal redress in exposing the corrupt and outrageous actions taken by Lindsey Middlecamp, the Minneapolis City Attorneys Office, Ramsey County Judges, and the Attorneys of the [SPCAO]." (*Id.* at 14.)

(7)     In purported contrast to Olson's handling of Fredin, Olson "has not prosecuted Major Grace Miller, Catherine Schaefer, or Lindsey Middlecamp for their actions to solicit an assault, kidnap, stalking, and robbery during April 28, 2017 [i.e., the search of Fredin's home, seizure of various items during that search, and the restraint of Fredin and a second individual during the search] or many of their other actions . . . ." (*Id.* at 15; *see also id.* at 6 (confirming that Fredin's characterization here concerns the April 2017 search).)

(8)     Olson and other SPCAO attorneys "acting in concert with the Ramsey County Court denied [Fredin] an affirmative defense associated with the First Amendment" (presumably in Case No. 62-CR-17-3156). (*Id.* at 16.)

(9)     With respect to her handling of Fredin, Olson "acted with deliberate malice and reckless intent." (*Id.*)[3]

---

[3]  Out of completeness, the Court also notes Fredin's allegation that in a civil action he filed, Olson purportedly "admit[ed]" that the April 2017 search "was unlawfully conducted to procure evidence" in two civil cases seeking harassment restraining orders against Fredin. (*Id.* at 6–7.)  As the Court understands Fredin, Olson's "admission" arises from the narrative component of an officer's report stating that the search "was done at the direction of the [SPCAO] to obtain/preserve evidence of this case, *and other pending cases.*" (*Id.* at 7 (emphasis added).)  The referent of "this case" here is presumably a then-pending criminal investigation of Fredin.  Fredin asserts, however, that there were no *other* "pending cases," making the narrative's statement incorrect—unless "other pending cases" refers to the *civil* cases against Fredin, cases for which (Fredin suggests) it would be inappropriate to collect evidence through a police-executed search.  (*Id.*)  Even accepting as true the factual allegations here, Fredin's claim that Olson has *admitted* wrongdoing is a "legal conclusion . . . couched as factual allegations" that this

These allegations do not state a § 1983 claim against Olson, given that Fredin specifically brings this action against her in her official capacity. (*See id.* at 5 ("Plaintiff brings this action against [Olson] in her official capacities . . . .").) "'A suit against a government official in his or her official capacity is "another way of pleading an action against an entity of which an officer is an agent."'" *Pitts v. Ramsey Cty.*, No. 17-CV-4261-MJD-TNL, 2018 WL 3118437, at *8 (D. Minn. May 25, 2018) (quoting *Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007) (quoting *Monell v. N.Y. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978))), *R. & R. adopted*, 2018 WL 3118293 (D. Minn. June 25, 2018). Fredin's claim against Olson is thus effectively a claim against the City of Saint Paul.

As the Eighth Circuit has recognized, "[i]n general, 'a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents' on a respondeat superior theory of liability." *Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (quoting *Monell*, 436 U.S. at 694). But "'[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers,'" and "'[m]oreover, . . . local governments . . . may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has

---

Court will disregard. *Hager*, 735 F.3d at 1013. Similarly, Fredin flatly asserts that "Olson used physical force and violence to coerce [Fredin] to remove LindseyMiddlecamp.com and to engage in specific acts after he refused." (Compl. 9.) This too is a bare legal conclusion asserted as a fact, so the Court will disregard it.

not received formal approval through the body's official decisionmaking channels.'" *Id.*

(quoting *Monell*, 436 U.S. at 690–91) (ellipses and first brackets in *Marsh*).  In this case,

even accepting Fredin's Olson-related allegations as true, he has not alleged that her

conduct implemented or executed a policy or custom of the City of Saint Paul.  This

problem counsels dismissal (without prejudice) of the complaint against Olson.

Even if Fredin could fix this pleading problem, a third obstacle compels dismissal.

Fredin seeks injunctions bearing on Case Nos. 62-CR-17-3156 and 62-CR-18-157,

criminal cases in Minnesota state court.  (*See* Compl. 17.)  Under *Younger v. Harris*,

401 U.S. 37 (1971), and its progeny, "[f]ederal court abstention is warranted when one of

a few 'exceptional' types of parallel pending state court proceedings exist[.]"  *Banks v.*

*Slay*, 789 F.3d 919, 923 (8th Cir. 2015) (quoting *Sprint Commc'ns, Inc. v. Jacobs*,

571 U.S. 69, 73 (2013)).[4]

The Eighth Circuit recently observed that caselaw generates "[t]hree lines of

inquiry for determining whether *Younger* abstention is appropriate":

> First, does the underlying state proceeding fall within one of
> the three "exceptional circumstances" where *Younger*
> abstention is appropriate?  Second, if the underlying
> proceeding fits within a *Younger* category, does the state
> proceeding satisfy what are known as the "*Middlesex*"
> factors?  And third, even if the underlying state proceeding

---

[4]  Both actions for which Fredin seeks injunctive relief are "pending" for *Younger*
purposes.  "For purposes of applying *Younger* abstention, the relevant time for
determining if there are ongoing state proceedings is when the federal complaint was
filed." *Tony Alamo Christian Ministries v. Selig*, 664 F.3d 1245, 1250 (8th Cir. 2012)
(citing sources).  Case Nos. 62-CR-17-3156 and 62-CR-18-157 were both ongoing
proceedings when Fredin filed the present suit on October 11, 2018.  *See* Register of
Actions, Miller Action; Register of Actions, Middlecamp Action.

7

satisfies the first two inquiries, is abstention nevertheless
inappropriate because an exception to abstention applies?

*Minn. Living Assistance, Inc. v. Peterson*, 899 F.3d 548, 551 (8th Cir. 2018) (internal

citations omitted).

With respect to the first question, "*Younger* abstention is applicable only where

the state proceeding qualifies as (1) a criminal prosecution, (2) a civil enforcement

proceeding that is akin to a criminal prosecution, or (3) a proceeding implicating a state's

interest in enforcing the orders and judgments of its courts." *Id.* at 552 (quoting *Sprint

Commc'ns*, 571 U.S. at 72–73, 78).  Fredin offers no challenge here (*see* Pl.'s Mem.

Supp. Mot. Prelim. Inj. and *Younger* Bad Faith Hr'g 23–27 [Doc. No. 2]),[5] and properly

so, as the state proceedings here are criminal prosecutions.

For the second question, "we ask whether the state proceeding (1) is judicial in

nature, (2) implicates important state interests, and (3) provides an adequate opportunity

to raise constitutional challenges." *Peterson*, 899 F.3d at 553 (citing *Middlesex Cty.

Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).  Fredin does not

challenge that the proceedings he seeks to enjoin are judicial in nature or implicate

important state interests.  (*See* Pl.'s Mem. 23–27.)

Fredin does argue that the third *Middlesex* factor does not apply here—*i.e.*, he

claims that the state-court proceedings do not provide him an adequate opportunity to

raise his constitutional challenges.  (Pl.'s Mem. at 23–26, 28.)  The Supreme Court has

---

[5] Fredin's Complaint does not discuss *Younger* abstention, but the Memorandum does.
Given the relevance of *Younger* here, the Court will consider here the Memorandum's
*Younger*-related arguments.

clarified that the "opportunity" needed here is minimal: parties "need be accorded only an

opportunity to fairly pursue their constitutional claims in the ongoing state proceedings,"

*Juidice v. Vail*, 430 U.S. 327, 337 (1977) (citing *Gibson v. Berryhill*, 411 U.S. 564, 577

(1973)); *see also Tony Alamo Christian Ministries v. Selig*, 664 F.3d 1245, 1249 n.2  (8th

Cir. 2012) (citing *Juidice*), bearing in mind that "[s]tate courts are competent to

adjudicate federal constitutional claims," *Oglala Sioux Tribe v. Fleming*, 904 F.3d 603,

613 (8th Cir. 2018) (citing *Moore v. Sims*, 442 U.S. 415, 430 (1979)).

The Court construes Fredin's Complaint as asserting the following constitutional

violations.  First, he contends that his First Amendment rights have been violated by his

purported inability to raise a First Amendment defense in his criminal proceedings.  (*See*

Compl. 15–16.)  Second, he suggests that he has been subject to retaliatory conduct based

on his public speech, and that this retaliation also violates the First Amendment.  (*See id.*)

Third, he contends that the April 2017 search violated the Fourth Amendment.  (*See id.* at

16.)  The Court sees no reason why Fredin cannot raise these issues in his state-court

proceedings.[6]  Indeed, Fredin argues that in Case No. 62-CR-17-3156, he tried to raise

his First Amendment arguments (*e.g.*, by proposing a First Amendment–related jury

instruction), but the trial court rejected that attempt.  (*See id.*)  This shows Fredin *failing*

---

[6]  Without prejudging in any way Fredin's First Amendment arguments, the Court notes a
concern with how his Fourth Amendment argument bears on his Minnesota criminal
proceedings.  Fredin does not explain how any evidence collected during the April 2017
search bears on those proceedings.  So even if the April 2017 search ran afoul of the
Fourth Amendment, it is unclear why the relevant remedy would be an injunction
affecting distinct criminal actions.  In any event, the Court need not consider the issue
here; Minnesota state courts are perfectly capable of addressing this issue in the first
instance.

*to prevail* on an argument in state court, not of him *lacking an opportunity* to make the

argument. Fredin can try to assert his First and Fourth Amendment arguments on appeal

in Case No. 62-CR-17-3156, and can try to assert those arguments before the trial court

(and on appeal, if necessary) in Case No. 62-CR-18-157. That victory is not assured does

not show that Fredin has no opportunity to make the argument.

Fredin raises various arguments as to why Minnesota state courts do not provide

him an adequate opportunity to address his constitutional claims, but these all fail.

- First, he argues that his inability to raise his constitutional claims is shown
  by the purported fact that the Minnesota Judicial Branch and the Minnesota
  rules of civil and criminal procedure "are completely devoid of any
  reference to, much less applicable procedures, for prior restraint contempt
  proceedings by collateral estoppel/collateral bar rule." (Pl.'s Mem. 24.)
  Fredin's point here is not entirely clear, but even assuming (without
  deciding) that he has pointed to a gap in Minnesota procedural law, that
  Fredin lacks the procedural mechanism that he would prefer to use does not
  show that Minnesota's state courts deny him the opportunity to raise his
  constitutional claims.

- Second, Fredin seems to suggest that when appellate courts review
  Minnesota trial-court decisions finding violations of restraining orders, the
  appellate courts lack a proper record. (*See id.*) As a general matter, the
  Court does not understand how this affects the adequate-opportunity
  analysis; nor, more specifically, does the Court understand why Fredin
  thinks that appellate courts reviewing his criminal trials will lack a record
  sufficient to assess his constitutional claims.

- Third, Fredin asserts that "Defendants do not meaningfully or adequately
  provide Plaintiff an opportunity to raise his constitutional claims asserted in
  this matter where the improper and unconstitutional pattern of conduct
  engaged in by the Defendants forms a large part of Plaintiff's constitutional
  claims in this action e.g., bankrupting him financially so as to prevent his
  adequate right to seek meaningful appellate review." (*Id.* at 25.) The Court
  construes this as a claim that a lack of resources has prevented Fredin from
  asserting his constitutional claims. This is not plausible. As of the date of
  this Report and Recommendation, Fredin has filed no fewer than five

10

federal actions.[7]  Fredin has not shown that a lack of resources has prevented him from trying to assert his rights.

- Fourth, Fredin suggests that the Minnesota Court of Appeals's handling of his appeal in *Miller v. Fredin*—his appeal of a trial-court decision to grant Grace Miller a harassment restraining order against him—suggests that he is being denied "meaningful review" of his claims.  *Id.*  Even assuming that, if true, this would be evidence that Fredin lacks an opportunity to raise his constitutional challenges in his present criminal proceedings, Fredin mischaracterizes the Court of Appeals's decision.  Fredin asserts that the decision was "conclusory" and "failed to address a single legal point [Fredin raised on appeal]," *id.*, but the decision belies that description.  *See generally Miller v. Fredin*, No. A16-0613, 2017 WL 280974 (Minn. Ct. App. Jan. 23, 2017).  The Court of Appeals did not ignore Fredin's arguments; it found them lacking.

- Fifth, Fredin argues that "the Ramsey County Court has issued decisions involving Plaintiff with demonstrably conflicted fact-finders."  (Pl.'s Mem. 25.)  Assuming—without deciding—that decisions from the Ramsey County Court did involve biased participants, Fredin has not shown that he has been prevented from making that arguments (and arguments on his constitutional claims) to the Minnesota appellate courts.

In summary, Fredin has not demonstrated that he lacks an adequate opportunity to raise his constitutional claims in the state-court proceedings related to his criminal trials. The *Middlesex* factors counsel in favor of *Younger* abstention here.

This brings us to the third *Younger* issue: is abstention inappropriate because of an applicable exception?  "[A] federal court should not abstain if there is a showing of 'bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate.'"  *Plouffe v. Ligon*, 606 F.3d 890, 893 (8th Cir. 2010) (quoting *Middlesex*

---

[7]  This count includes the present action and four others.  *See* Docket, *Fredin v. Middlecamp*, No. 17-CV-3058-SRN-HB; Docket, *Fredin v. Miller*, No. 18-CV-466-SRN-HB; Docket, *Fredin v. Clysdale*, No. 18-CV-510-SRN-HB; Docket, *Fredin v. Halberg Criminal Defense*, No. 18-CV-2514-SRN-HB.

*Cty.*, 457 U.S. at 435); *see also Curd v. City of Searcy*, No. 17-3800, 2018 WL 4929443, at \*1 (8th Cir. Oct. 11, 2018) (per curiam) (citing *Plouffe*).[8] The Supreme Court has noted that these exceptions are "narrow." *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611 (1975). Fredin appears to treat these as three separate tests and argues that all three apply here. (*See* Pl.'s Mem. 27–36.) Assuming without deciding that three separate tests are in play here, the Court finds that none of the exceptions apply.

With respect to bad faith, in the *Younger* context bad faith "generally means that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction." *Kugler v. Helfant*, 421 U.S. 117, 126 n.6 (1975); *see also Cent. Ave. News, Inc. v. City of Minot*, 651 F.2d 565, 570 (8th Cir. 1981) ("The gravamen of bad faith prosecution is the lack of a reasonable expectation that valid convictions will result.") (citing *Eagle Books, Inc. v. Reinhard*, 418 F. Supp. 345, 351 (N.D. Ill. 1976), *vacated on other grounds*, 432 U.S. 902 (1977)); *cf. Baffert v. Cal. Horse Racing Bd.*, 332 F.3d 613, 621 (9th Cir. 2003) (quoting *Kugler*); *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) (quoting *Perez v. Ledesma*, 401 U.S. 82, 85 (1971)). Fredin strains to argue that his state-court prosecutions have been in bad faith (*see generally* Pl.'s Mem. 28–33), but even accepting the allegations of fact in the Complaint as true, the Court cannot find that those prosecutions were brought without a reasonable

---

[8]  The Supreme Court has suggested that a fourth exception might exist where a state statute is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Plouffe*, 606 F.3d at 893 (quoting *Trainor v. Hernandez*, 431 U.S. 434, 447 (1977)). Fredin does not suggest that this exception applies to his case (*see generally* Pl.'s Mem. 23–36), so the Court will not consider it further.

expectation of conviction.  Minnesota state courts have issued harassment-restraining

orders against Fredin with respect to at least three people.  *See* Miller HRO; Middlecamp

HRO; Order Granting Harassment Restraining Order After Hearing, *Schaefer v. Fredin*,

Case No. 62-HR-CV-16-411 (Minn. Dist. Ct. Nov. 17, 2016).  He complains that the

procedures leading to those orders did not protect his rights, but at least one of those

orders has been upheld by the Minnesota Court of Appeals.  In addition, in Case No.

62-CR-17-3156, a jury convicted him of stalking the recipient of one of those restraining

orders.  *See* Register of Actions, Miller Action.  Given these circumstances, Fredin has

not shown that the prosecutions against him were brought without reasonable expectation

of obtaining a valid conviction.

As for harassment, for similar reasons, that exception does not apply here.  Fredin

contends that the actions of various individuals constituted a campaign of harassment (*see*

Pl.'s Mem. 33–35), but given the successes against him in the Minnesota state courts—

again, harassment-restraining orders against him from three separate women, and a jury

conviction for stalking, all of which are matters of public record the Court may

consider—the Court cannot find that the state-court activity demonstrates harassment.

A third *Younger* exception applies where there exists a "extraordinary

circumstance that would make abstention inappropriate."  *Middlesex Cty.*, 457 U.S. at

436.  The Supreme Court has suggested that where one has an adequate opportunity to

raise one's claims in state-court proceedings, such exceptional circumstances do not

exist.  *See Kugler*, 421 U.S. at 124–25 ("The policy of equitable restraint expressed in

[*Younger*] . . . is founded on the premise that ordinarily a pending state prosecution

13

provides the accused a fair and sufficient opportunity for vindication of federal

constitutional rights. . . . *Only if 'extraordinary circumstances' render the state court*

*incapable of fairly and fully adjudicating the federal issues before it, can there be any*

*relaxation of the deference to be accorded to the state criminal process.*") (emphasis

added; citation and footnote omitted); *see also Gillette v. N.D. Disciplinary Bd. Counsel*,

610 F.3d 1045, 1048–49 (8th Cir. 2010) (finding no "exceptional circumstance" where

relevant issues could be raised in state proceedings).  The "circumstances must be

'extraordinary' in the sense of creating an extraordinary pressing need for immediate

federal equitable relief, not merely in the sense of presenting a highly unusual factual

situation."  *Kugler*, 421 U.S. at 125.  In the present circumstances, Fredin has not shown

that the extraordinary-circumstances exception applies.  (*See generally* Mem. 35–36.)  As

discussed above, nothing alleged in the Complaint would create a plausible inference that

the Minnesota courts (at the trial and/or appellate level) cannot fairly and fully adjudicate

the constitutional issues that Fredin has raised here.

In summary, the conditions for *Younger* abstention apply and the exceptions do

not.  The Court thus recommends abstaining from interfering with the Minnesota courts'

handling of Case Nos. 62-CR-17-3156 and 62-CR-18-157.

This leads to the question of whether the Court should stay this action or dismiss

it.  On one hand, staying a matter rather than dismissing it is the general rule "[i]n cases

where damages are sought," *Night Clubs, Inc. v. City of Fort Smith*, 163 F.3d 475, 481

(8th Cir. 1998) (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730 (1996)), but

here, Fredin seeks injunctive relief rather than damages (*see* Compl. 17).  On the other

hand, when *Younger* abstention applies, the Eighth Circuit has emphasized a preference

for staying the action rather than dismissing it, "to preserve any claims that might not be

resolved by the parallel proceedings." *Ritchie Capital Mgmt., L.L.C. v. BMO Harris*

*Bank, N.A.*, 868 F.3d 661, 666 (8th Cir. 2017) (citing *Royal Indem. Co. v. Apex Oil Co.*,

511 F.3d 788, 797–98 (8th Cir. 2008)).  In this case, there are independent reasons to

dismiss the Complaint: specifically, Fredin names one Defendant inappropriately and has

not stated a cause of action against the other.  Staying this action would thus just delay

the inevitable; if at some future time the stay ends and the case proceeds, the Complaint's

problems will remain and dictate dismissal.  Dismissal is thus the best course.[9]

---

[9]  Fredin suggests that the Court should hold an evidentiary hearing to "resolve any
factual disputes on whether *Younger* abstention is appropriate," and cites a pair of cases
from the Second Circuit in support of the proposition that courts should generally hold
evidentiary hearings when a plaintiff suggests that an exception to *Younger* abstention
applies. (Pl.'s Mem. at 39 (citing *Kern v. Clark*, 331 F.3d 9, 10 (2d Cir. 2003); *Sica v.
Connecticut*, 331 F. Supp. 2d 82, 87 (D. Conn. 2004)).)  Assuming this is the Second
Circuit's approach, the Court declines to apply it here.  First, the Court is unaware of any
Eighth Circuit precedent adopting the rule.  Second, even if there were generally a
preference for evidentiary hearings where a party claims that a *Younger* exception
applies, a hearing would have no utility here where unquestionable fact findings,
combined with relevant legal doctrine, dictate that the exceptions do not apply.  For
instance, the bad-faith exception applies only where there's no "reasonable expectation
that valid convictions will result"; here, a valid conviction actually occurred.  Under these
circumstances, no factual showing Fredin could make would show that there was no
reasonable expectation that valid convictions could result from Fredin's prosecution.
Similarly, the extraordinary-circumstances exception applies only where state courts are
"incapable of fairly and fully adjudicating" the constitutional issues that Fredin has
raised, but Fredin has said nothing in his pleadings to suggest that, as a factual matter,
Minnesota's appellate courts cannot consider his constitutional claims.  Finally,
notwithstanding these points, given that there are independent reasons to dismiss Fredin's
Complaint (as noted above), holding an evidentiary hearing on the *Younger* exceptions
makes little sense.  For if the Court held such a hearing and determined that *Younger*

Accordingly, based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1.　　This action be **DISMISSED without prejudice**;

2.　　Fredin's Application to Proceed in District Court Without Prepaying Fees or Costs [Doc. No. 3] be **DENIED**; and

3.　　Any request for a preliminary injunction or for a *Younger* bad faith hearing contained in Fredin's Memorandum [Doc. No. 2] be **DENIED AS MOOT**.[10]

Dated: October 29, 2018　　　　　　　s/ *Hildy Bowbeer*
　　　　　　　　　　　　　　　　　　　　Hildy Bowbeer
　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.  Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  *See* Local Rule 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).

---

abstention was inappropriate, it would still need to dismiss this action based on these other problems.

[10] The Memorandum of Law filed at Doc. No. 2 is styled as memorandum in support of a motion for a preliminary injunction. (*See* Mem. 1.)  Though the Complaint requests preliminary injunctions enjoining proceedings in Case No. 62-CR-17-3156 and Case No. 62-CR-18-157 (*see* Compl. 17), there is no actual motion filed by Fredin requesting a preliminary injunction.  To the extent Fredin intended for the Complaint or Memorandum to themselves reflect a motion for a preliminary injunction, the Court recommends that any such motion be denied as moot, in light of the recommendation for dismissal.